Sarah Erickson André (SBN 236145)
sandre@nixonpeabody.com
Neal J. Gauger (SBN 293161)
ngauger@nixonpeabody.com
NIXON PEABODY LLP
Gas Company Tower
555 West Fifth St., 46th Floor
Los Angeles, CA  90013-1010
Tel: 213-629-6000
Fax: 213-629-6001

Jason C. Kravitz (admitted *pro hac vice*)
jkravitz@nixonpeabody.com
Troy K. Lieberman (admitted *pro hac vice*)
tlieberman@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: (617) 345-1000
Fax: (617) 345-1300

Attorneys for Defendant and Counterclaimant
NEFF, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKLEY, INC., a Washington corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>NEFF, LLC d/b/a NEFF HEADWEAR, a California limited liability company,<br><br>        Defendant. | Civil Action No.<br>15-cv-00148 BAS DHB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER COMPELLING 30(B)(6) DEPOSITION OF OAKLEY, INC., SANCTIONS, AND OTHER RELIEF** |
| NEFF, LLC d/b/a NEFF HEADWEAR, a California limited liability company,<br><br>        Counterclaimant,<br><br>    v.<br><br>OAKLEY, INC., a Washington corporation,<br><br>        Counterclaim Defendant. | |

# TABLE OF CONTENTS

Page(s)

I.     Introduction .................................................... 1

II.    Background...................................................... 2

III.   Argument ....................................................... 5

       A. Oakley Violated Its Obligation to Produce a Knowledgeable Witness ..... 5

          1. Functionality and Basis for Design Choices (Topics 8 and 9) ............ 6

          2. Sales (Topic 4) ...................................... 8

          3. Advertising/Promotion (Topic 4)....................... 9

          4. Elements of the Asserted Trade Dress (Topic 2).............. 10

          5. Prior Enforcement (Topic 10)............................. 11

       B. Oakley's Conduct Warrants Sanctions ..................... 13

       C. Oakley's Gamesmanship with Respect to Other Discovery .................. 17

IV.    CONCLUSION ............................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138 (9th Cir. 2009) .............. 6

*Avago Techs., Inc. v. IPTronics Inc.*, No. 10-cv-2863-EJD, 2015 U.S. Dist. LEXIS 66177 (N.D. Cal. May 19, 2015) ....................................................... 5, 16

*Brady v. Grendene USA Inc.*, No. 12-cv-604-GPC (KSC), 2015 U.S. Dist. LEXIS 97734 (S.D. Cal. July 24, 2015) .......................................................... 2

*Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235 (D. Md. 2010)............. 6

*FDIC v. Butcher*, 116 F.R.D. 196 (E.D. Tenn. 1986) ............................................... 5

*Int'l Jense, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. 2013) ................. 8

*Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855 (7th Cir. 2010) .......................... 7

*JSR Micro, Inc. v. QBE Ins. Corp.*, No. 09-cv-3044-PJH (EDL), 2010 U.S. Dist. LEXIS 56000 (N.D. Cal. May 14, 2010)................................................. 16

*Leatherman Tool Grp., Inc. v. Cooper Indus. Inc.*, 199 F.3d 1009 (9th Cir. 1999) ................................................................................................................. 6

*Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-5665-YGR (JSC), 2015 U.S. Dist. LEXIS 79412 (N.D. Cal. June 18, 2015) ......................................... 16

*Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121 (M.D.N.C. 1989) ............. 6

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) ................. 5

*Sony Elecs., Inc. v. Soundview Techs., Inc.*, 217 F.R.D. 104 (D. Conn. 2002)......... 5

*S. Cal. Rehab Assoc., Inc. v. Nautilus*, No. 09-cv-744-JLS (AJB), 2010 U.S. Dist. LEXIS 76508 (S.D. Cal. July 29, 2010)

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2011) ..................... 6, 18

*Vestin Realty Mortgage II, Inc. v. Vestine Fund II, LLC*, No. 08-cv-2011-LAB (AJB), 2010 U.S. Dist. LEXIS 113666 (S.D. Cal. Oct. 25, 2010)............14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30(b)(6) ........................................................................... 2

Fed. R. Civ. P. 30(c)(2)........................................................................... 14

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro Before Trial (The Rutter Group 2012) ............................................................. 5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NEFF'S *EX PARTE* APPLICATION
15-CV-00148 BAS DHB

## I.   Introduction[1]

Defendant and Counterclaimant Neff, LLC ("Neff") submits this *ex parte* application to seek urgent relief for egregious discovery violations committed by Plaintiff and Counterclaim Defendant Oakley, Inc. ("Oakley").  This is the second motion Neff has been forced to file in connection with the Oakley 30(b)(6) deposition.  Indeed, as detailed herein, Oakley continues to engage in a pattern of gamesmanship designed to frustrate Neff's efforts to obtain information needed to support its defense – most recently producing a witness to a *court-ordered* 30(b)(6) deposition who literally knew nothing (and made no effort to educate herself) about key topics listed in a deposition notice first served on Oakley more than two months ago.

In fact, Oakley's witness was so thoroughly unprepared on the key topics of Razor Blades sales, Razor Blades advertising/promotion, prior efforts to enforce the Razor Blades trade dress, the elements of the trade dress, and the functionality of each element of the trade dress, that this had to be a strategic decision – balancing the risk of an unfavorable court ruling against the benefit of frustrating Neff's effort to file an early motion for summary judgment.  Indeed, this was the very same witness (Roeya Vaughan) whom Oakley characterized (in furtherance of its earlier stall tactics) as being uniquely capable of providing "*meaningful*" testimony on all of Neff's deposition topics.  *See* Dkt. 27 at 13 (Oakley represented to Court that "no other witness" (other than Ms. Vaughan) "has the background that would allow her to meaningfully provide testimony on the 17 topics noticed by Neff" (emphasis supplied)).

---

[1] In support of this application, Neff is relying on extensive excerpts from the 30(b)(6) deposition at issue.  Because Oakley requested that the entire transcript be maintained as "CONFIDENTIAL – FOR COUNSEL ONLY" until having an opportunity to perform a more discerning confidentiality review, Neff has redacted this brief extensively.  *See* Declaration of Jason C. Kravitz ("Kravitz Decl.") ¶ 2.

In truth, Ms. Vaughan's testimony was "meaningful" only in exposing Oakley's utter lack of respect for this Court's previous Order and the litigation process.[2]

In light of Oakley's discovery gamesmanship – detailed below – Neff respectfully requests that the Court send a strong message to Oakley to remedy the situation and to deter this type of behavior going forward.

## II.   Background

On June 4, 2015, Neff served a deposition notice on Oakley pursuant to Fed. R. Civ. P. 30(b)(6).  Declaration of Jason C. Kravitz ("Kravitz Decl.") ¶ 5.  The deposition notice included the following topics for examination (emphasis added):

- <u>TOPIC NO. 2</u>:   The Razor Blades Trade Dress, including without limitation *each design element that comprises the Razor Blades Trade Dress*.

- <u>TOPIC NO. 4</u>:  Sales, advertising, and promotion of Razor Blades *from the Initial Release Date to the present*.

- <u>TOPIC NO. 8</u>:  The design and development of Razor Blades, including without limitation the design and development of the lens, the bridge, the temples, the rim, and the use of the OAKLEY mark/logo, and further including *the basis(es) for selecting each design element*.

- <u>TOPIC NO. 9</u>:  The *function performed by each design element* of the Razor Blades, including without limitation the lens, the bridge, the temple, and the rim.

- <u>TOPIC NO. 10</u>:  Efforts to enforce the purported Razor Blades Trade Dress.

---

[2] If the Court grants Neff's motion to compel, it will be the second time in two weeks that the attorneys representing Oakley have been ordered by a court in this district to produce a 30(b)(6) witness who is sufficiently prepared and capable of providing testimony on key topics.  *See Brady v. Grendene USA Inc.*, No. 12-cv-604-GPC(KSC), 2015 U.S. Dist. LEXIS 97734 (S.D. Cal. July 24, 2015) (ordering plaintiff to produce a knowledgeable witness for a 30(b)(6) deposition and ordering plaintiff to split the costs of the additional deposition with defendant).  A copy of this decision is attached to the Kravitz Decl. as Ex. B.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NEFF'S *EX PARTE* APPLICATION
15-CV-00148 BAS DHB

*Id.*

On June 12, 2015, Oakley served approximately 52 separate objections to the 30(b)(6) deposition notice.  Kravitz Decl. ¶ 6.  The parties met and conferred with regard to Oakley's largely baseless objections on June 16, 2015.  Kravitz Decl. ¶ 7.  Counsel for Oakley confirmed that, despite the objections, Oakley would be producing a witness on all seventeen (17) topics noticed by Neff.  Kravitz Decl. ¶ 7, Ex. C.  On June 17, 2015, the parties agreed the 30(b)(6) deposition would take place on July 8, and Oakley designated Roeya Vaughan as its sole deponent.  Kravitz Decl. ¶ 8.

On July 1, 2015, at the end of a previously scheduled "meet and confer" between counsel on their respective discovery responses, Oakley's counsel announced that she was unilaterally cancelling the 30(b)(6) deposition because Ms. Vaughan had been asked to attend a business meeting in Italy.  Kravitz Decl. ¶ 9.  Oakley's counsel repeatedly refused to state when the witness would be returning to California.  *Id.*  Oakley advised that it would produce Ms. Vaughan on August 5 (nearly a month later).  *Id.*

Neff quickly prepared and served its portion of a joint motion on July 6 (the day after the long holiday weekend), which motion sought to compel Oakley to produce a witness sooner.  Kravitz Decl. ¶ 10.  Oakley refused to provide its portion of the joint motion during the week of July 6, insisting that it needed "seven court days" to prepare its opposition.  Kravitz Decl. ¶ 11.[3]  This delay allowed Oakley to

---

[3] Incredibly, notwithstanding Oakley's claim that it needed seven court days to prepare its opposition, on Monday, July 13 (a week after Neff served its portion of the joint motion), Oakley's counsel proposed that the parties agree *not* to file a joint motion at all and, instead, simply call the court together the next day.  Kravitz Decl. ¶ 12.  Neff's counsel immediately advised that he would be more than willing to call the court together *after* the joint motion was filed.  *Id.*  Though Neff's counsel is of course not privy to Oakley's strategy, it would appear that Oakley's counsel was attempting to avoid having a written record of the dispute.  Oakley's counsel did this again very recently when it served a joint motion on Neff and – notwithstanding a complete lack of urgency – demanded that Neff submit its response within 7 days (on August 6) – the day after the court-ordered 30(b)(6)

"burn" the weeks of July 6 and 13 so that it could then rely on Ms. Vaughan's previously scheduled vacation to postpone the deposition until August 5.   The Court ordered Ms. Vaughan to submit a declaration attesting to her upcoming vacation, which she did.  Dkt. 28, Dkt. 29.  Relying on Ms. Vaughan's declaration, the Court ordered the deposition to take place on August 5, but expressed sympathy with Neff's frustration with the "cavalier" attitude the witness had exhibited.  Dkt. 30 at 2.

In its briefing, Neff suggested that Oakley be compelled to produce an alternative 30(b)(6) witness.  Dkt. 27 at 9, 11 .  In response, Oakley stated that "no other witness" besides Ms. Vaughan "has the background that would allow her to *meaningfully* provide testimony on the 17 topics noticed by Neff."  Dkt. 27 at 13 (emphasis supplied).[4]  The Court accepted Oakley's representation.

Perhaps the most important aspect of the Court's decision appeared in a footnote.  Specifically, the Court reminded the parties that they are to work cooperatively with each other in conducting discovery. Dkt. 30 at 2, fn. 1.  As demonstrated below, it appears that Oakley failed to read this portion of the decision.

Consistent with the Court's decision, Neff promptly re-noticed the 30(b)(6) deposition for August 5, 2015 for the same seventeen (17) topics.   Kravitz Decl. ¶ 13.    The 30(b)(6) deposition took place on August 5, 2015 and spanned

---

deposition.  *Id.*  Neff met Oakley's arbitrary deadline and served an opposition explaining why Oakley's motion failed on the merits and exposing Oakley's pattern of gamesmanship.  *Id.*  After receiving the opposition, Oakley announced it would not be filing the document.  *Id.*  This is addressed in more detail *infra*.

[4] Given that Ms. Vaughan has only worked at Oakley for ████████, *see* Kravitz Decl, Ex. A (32:25-33:1) and that she had ████████████████████ ████, *see* Kravitz Decl., Ex. A (35:23-25; 36:5-10), it is difficult to see how this representation was made in good faith.   In fact, Ms. Vaughan was not even identified ████████████████████████████████████████████████████ ███████████████████" Kravitz Decl., Ex. D (Response to Interrog. No. 3).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NEFF'S *EX PARTE* APPLICATION
15-CV-00148 BAS DHB

1    approximately 4.5 hours of testimony time before Neff's counsel suspended it.  *Id.*

2         Despite Oakley's representation that Ms. Vaughan was the only employee

3    who could offer meaningful testimony about all topics, she was woefully

4    unprepared on key topics.  In fact, Ms. Vaughan admitted that she spent a grand

5    total of ███████████      preparing for her deposition outside of a ████████

6    ████████████████.  Kravitz Decl., Ex. A (12:25-13:8; 30:16-20).   That

7    preparation was limited to ██████████████████████████████████

8    ███████████████████.  Kravitz Decl., Ex. A (14:8-15:1; 18:1-3; 18:17-19).

9    She admits she never spoke with ███████████████████████████████

10   ████████████████████████████████████████████████████████

11   █████████████████████████████████████████.  *See* Kravitz Decl., Ex. A

12   (86:17-21); Ex. D (Response to Interrog. No. 13).

13   ██████████████████████████████████████████████████████████.

14   Kravitz Decl., Ex. A (86:22-25).  She made similar confessions in connection with

15   several key areas of testimony as described in more detail below.  In short, and as

16   detailed more fully below, Ms. Vaughan made no effort to speak with anyone who

17   could actually inform her about topics essential to Neff's defense.

18        **III.   Argument**

19        **A. Oakley Violated Its Obligation to Produce a Knowledgeable Witness**

20        It is well established that a corporate entity appearing for a 30(b)(6)

21   deposition is obligated to designate and produce the "most qualified" witness to

22   testify on its behalf.  *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 798,

23   n. 4 (9th Cir. 2003).  The person or persons so designated must be able to testify

24   fully as to the matters designated.  *See* Schwarzer, Tashima & Wagstaffe, Cal. Prac.

25   Guide: Fed. Civ. Pro. Before Trial, 11:1414 at 11-181 (The Rutter Group 2012);

26   *FDIC v. Butcher*, 116 F.R.D. 196, 201 (E.D. Tenn. 1986) (designation of deponent

27   with limited knowledge about transaction held improper).   If necessary, the

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX*
*PARTE* APPLICATION
15-CV-00148 BAS DHB

corporation owes a duty to "educate" its designees, to prepare them so they can fully answer questions as to the designated topics. *Avago Techs., Inc. v. IPtronics Inc.*, 10-cv-2863-EJD, 2015 U.S. Dist. LEXIS 66177, *4 (N.D. Cal. May 19, 2015) (further citation omitted); *see also Sony Elecs., Inc. v. Soundview Techs., Inc.*, 217 F.R.D. 104, 112 (D. Conn. 2002).   Oakley has disregarded these fundamental principles.

Where, as here, a designated 30(b)(6) witness is unable to answer questions on designated topics, the corporation must immediately designate a new witness. *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989); *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 239 (D. Md. 2010) (if the unanswered information is significant enough, the 30(b)(6) deposition may have to be reconvened, possibly with a new witness, at the corporation's expense).

Here, it is clear that Oakley deliberately produced a witness who would be unable to offer meaningful testimony on subject matter directly relevant to Oakley's trade dress, its protectability, and whether Neff has infringed any of Oakley's rights.  As the plaintiff asserting trade dress rights in the configuration of its Razor Blades sunglasses, Oakley must demonstrate that: (1) the design is nonfunctional; (2) the design has acquired secondary meaning; and (3) there is a substantial likelihood of confusion between the products.  *See Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009).  The topics at issue in this motion – and the topics Ms. Vaughan was unprepared to address – are all undeniably relevant to these elements.

**Functionality and Basis for Design Choices (Topics 8 and 9).**  There can be no dispute that the function performed by each element of the asserted trade dress is highly relevant to this case.  *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (citing 15 U.S.C. § 1125(a)(3)) (plaintiff must prove design sought to be protected is not functional and was 'selected arbitrarily or for

purely aesthetic reasons"); *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1012 (9th Cir. 1999) ("For an overall product configuration to be recognized as a trademark, the entire design must be nonfunctional").

Ms. Vaughan was not prepared to testify about the utilitarian or functional aspects of the features of Oakley's purported trade dress.  She admitted she did not confer with ███████████████████████████████████████████████████████████████ █████████████████████████████████████████.  Kravitz Decl., Ex. A (86:17-21). ███████████████████████████████████████████████, notwithstanding her obligation to testify concerning the basis for selecting each design element (Topic 8).  Kravitz Decl., Ex. A (86:22-25).  She was even unable to offer *any* illumination of ███████████████████████ ████████████████████████████████.  Kravitz Decl., Ex. A (315:8-12).

Incredibly, Ms. Vaughan was never shown, and claims she never even knew about, ███████████████████████████████████████████████████████████████ █████████████████████████████████████.  *See, e.g.,* Kravitz Decl., Ex. A (237:1-3; 273:5-10 (█████████████████████████████)).[5]  One court of appeals aptly characterized expired utility patents as very helpful "cheat sheets" for evaluating functionality of a design.  *See Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010).  Indeed, it is difficult to envision a more comprehensive description of the utilitarian functions performed by the elements of sunglasses than the five utility patents Oakley secured in the 1980s and which protected the Razor Blades for years.

These patents dictate the functional aspects of virtually every aspect of the Razor Blades product.  For example, The '851 patent claims and describes a *single*

---

[5] In fact, the witness was so surprised by these patents that Oakley's counsel felt the need to coach her with this impermissible speaking objection: ███████████████████ ████████████████████████████████████ Kravitz Decl., Ex. A (240:13-18).

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

("unitary") lens "located in the path of the wearer's fields of vision, frontwardly and sidewardly" because "dual lens systems [are] inherently incapable of meeting the demands of [fast-paced] certain activities. . . ." Kravitz Decl. ¶ 55 and Ex. G ('851 patent at claim 1(a) and 1:23-26). The '851 patent further claims and describes all of the dimensions of the lens, including the "optimal" radius of the curvature of the lens (3.5-4.0 inches), length of the lens (5.5-7.0 inches), width of the lens (2.0-2.75 inches), and the distance between the top of the nose piece and top of the lens (.75-1.50 inches). *Id.* ('851 at Claims 1, 3, and 6 and 2:65-3:1-10). Yet, Ms. Vaughan was not even told about █████████████████████████ ██████████ ."[6]

There can be no dispute that Ms. Vaughan was not sufficiently prepared to offer meaningful testimony on these topics.

**Sales (Topic 4).** Testimony as to sales and advertising is undeniably relevant to secondary meaning. *See Int'l Jense, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993) (noting sales, advertising, and promotional activity are relevant in determining secondary meaning). Moreover, Oakley's sales – or lack thereof – are relevant to Oakley's alleged damages and Neff's defense of abandonment.

In response to Neff's Interrogatory No. 7, Oakley only provided sales data back to 2005.[7,8] Kravitz Decl. ¶ 15 and Ex. E. Oakley has never provided a

---

[6] The Court may recall that – during the deposition – counsel called chambers to seek assistance with a dispute. *See* Kravitz Decl. ¶ 16. At that time, Neff's counsel was attempting to question Ms. Vaughan about the contents of Oakley's patents. *Id.* In response, Oakley's counsel attempted to interfere with and obstruct the questioning by lodging speaking objections and coaching the witness to read the entire patent before answering questions about specific portions. *See, e.g.* Kravitz Decl., Ex. A (240:3-16). Your Honor was busy with a settlement conference, but asked counsel to call back later in the day. Kravitz Decl. ¶ 16. Neff's counsel assessed the situation later in the afternoon and, given how unprepared Ms. Vaughan was on so many key topics, decided the issues would best be addressed collectively and in written form. *Id.*

[7] One thing Ms. Vaughan *did* know is that ████████████████████████████ █████ sales. Kravitz Decl., Ex. A (91:24-92:3). ███████████████████████████

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

1  satisfactory explanation for why earlier sales have not been provided.  Ms. Vaughan

2  testified that she ████████████████████████████████████████████████████████████

3  ███████████████████  but she quickly admitted to having taken no steps

4  ███████████████████████████████████.  Kravitz Decl., Ex. A (167:7-25).  She

5  admits she spoke to no one ██████████████████████████████████████, Kravitz

6  Decl., Ex. A (30:24-31:2) and – ████████████████████████████████████████████

7  ███████████████████████████████████████  Kravitz Decl., Ex. A (30:11-

8  15) – ████████████████████████████████████████████████████████████████[9]

9  *See, e.g.* Kravitz Decl., Ex. A (31:3-9 (████████████████████████████████████

10  ████████████████); 92:4-9 (██████████████████████████████████████████)).

11      There can be no dispute that Ms. Vaughan was not sufficiently prepared to

12  offer meaningful testimony on this topic.

13      **Advertising/Promotion (Topic 4).**  Oakley has stated that it intends to rely

14  on ███████████████████████████████████████████████████████████████████████

15  ███████████████████████████████████.  *See*  Kravitz Decl. at ¶ 18 and

16  Ex. D (Response to Interrog. No. 17).  Yet, Ms. Vaughan had absolutely no

17  knowledge concerning the amount Oakley spent on advertising or promotion for

18  Razor Blades prior to Oakley's release of the "Heritage Collection" in 2014.  *See*

19  Kravitz Decl., Ex. A (98:25-99:5 (██████████████████████████████████████████

20  ██████████████████████████████████████████).  She confessed she had no

21  ██████  Ms. Vaughn was unable to state Oakley's U.S. Razor Blades sales.  Kravitz

22  Decl., Ex. A (92:4-6) ██████████████████████████████████████████████████████
    ████████████████).

23  [8] Shortly before the deposition, Oakley produced a small number of documents

24  relating to sales in the late 1980s.  Kravitz Decl. ¶ 17. However, Oakley has not
    supplemented its answer to Interrogatory No. 7.  *Id.*

25  [9] In fact, her review of the Razor Blades sales data was so perfunctory that she did
    not even notice that ████████████████████████████████████████████████████████

26  ████████████████████.  Kravitz Decl., Ex. A (98:9-16) █████████████████████████

27  ███████████████████████████████████████████████████████████████████████████)

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

information about ██████████████████████████████████████████████

████████████████████████.[10]   Kravitz Decl., Ex. A (97:5-17; 100:17-23).  She had no

knowledge regarding upcoming promotional efforts, if any, for the Razor Blades or

Oakley's plans for increasing sales of Razor Blades.   Kravitz Decl., Ex. A (93:1-7

██████████████████████████████); 93:17-25 (█████████

████████████████████

██████). Ms. Vaughan also had no knowledge about ████████████

████████████████.  *See* Kravitz Decl., Ex. A (99:6-11; 100:24-101:1).  Ms. Vaughan

specifically stated she would need to speak with someone ████████████████

██████████████████ regarding endorsements (and confessed she had not done so).

*See* Kravitz Decl., Ex. A (99:12-100:5).

     There can be no dispute that Ms. Vaughan was not sufficiently prepared to

offer meaningful testimony on this topic.

**Elements of the Asserted Trade Dress (Topic 2).**   While Oakley has

repeatedly characterized the RAZOR BLADES Trade Dress as "the overall design

of the sunglasses," *see, e.g.,* Complaint (Dkt. 1) at ¶ 8, Ms. Vaughan was only able

to identify ██████████ elements that comprise the trade dress Oakley is seeking to

protect.  Kravitz Decl., Ex. A (38:17-39:3; 30:4-5) ████████████████████

███████████████████████████████████████████████████

█████████████████████████████).  Ms. Vaughan could not identify any

other elements.   Kravitz Decl., Ex. A (41:5-7 ("██████████████████████

███████████████████████████████████████████████████

_____

[10] Ms. Vaughan also had no knowledge ████████████████████████

████████████████████████████████████████████████.  Kravitz

Decl., Ex. A (78:10-16).  Ms. Vaughan had no knowledge ████████████████.

Kravitz Decl., Ex. A (89:12-16; 90:16-18).

███████████).[11]  For example, when asked whether the notches in the Razor Blades lens are part of the asserted trade dress, she said █████████.  Kravitz Decl., Ex. A (41:8-20).    Additionally, when specifically asked whether the following elements of the Razor Blades were part of the asserted trade dress, Ms. Vaughan testified she did not know:

- The ████████████████████.  Kravitz Decl., Ex. A (41:22-42:7);

- The █████████████.  Kravitz Decl., Ex. A (46:19-23);

- The ██████.  Kravitz Decl., Ex. A (50:10-12);

- The ███████████.  Kravitz Decl., Ex. A (50:17-22) (██████████████████████████████████);

- The ████████████.  Kravitz Decl., Ex. A (50:24-51:2) (███████████████████).

Incredibly, counsel for Oakley also made numerous objections to this entire line of questioning as "calling for a legal conclusion."  *See, e.g.* Kravitz Decl., Ex. A (37:12-15; 42:9-13; 42:22-43:1; 43:11-14; 44:2-8; 46:19-22; 49:16-20; 50:10-14; 50:17-21; 50:24-51:1).  Does Oakley seriously contend that it is inappropriate for Neff to question an Oakley 30(b)(6) witness about the elements of its trade dress?  This is an outrageous objection, akin to arguing that only an attorney can identify the trade secrets that were allegedly misappropriated by a defendant.    This information is the heart of Oakley's claim, and Oakley has an obligation to prepare its witness to testify knowledgeably.  Oakley filed this lawsuit, and Neff has an absolute right to know what it is accused of infringing.

There can be no dispute that Ms. Vaughan was not sufficiently prepared to

---

[11] Strangely, Ms. Vaughan later testified that ██████████████████████ ███████████ Kravitz Decl., Ex. A (42:4-7).

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

offer meaningful testimony on this topic.

**Prior Enforcement (Topic 10).**  Testimony about Oakley's previous efforts to enforce its Razor Blades trade dress is highly relevant to this action.  For example, positions Oakley has taken in prior proceedings, and representations it has made to other parties and/or courts, any licenses or covenants not to sue Oakley has negotiated, and the shape of the allegedly infringing designs Oakley has previously pursued are undeniably relevant to Neff's defenses.  Ms. Vaughan admitted that her preparation for this topic was limited to █████████████████████████

██████████████████████████████████████.  Kravitz Decl., Ex. A (177:14-20; 178:25-179:9; 179:10-14; 179-15:180:1; 1801:2-7 (██████████████████████████

████████████).  She knew nothing more.

Incredibly, Ms. Vaughan was unaware of ██████████████████████

██████████████████████████████████████████████████

█████████████████████.[13]  *See* Kravitz Decl., Ex. A (182:14-20  (██████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████); 182:21-183:1;  183:13-16  (███████

███████████████████████████████); Ex. H, I.  Nor did Ms. Vaughan have any knowledge of █████████████████████████████████████████

---

[12] The Bolle trade dress dispute resulted in Bolle commencing a 3-year opposition proceeding in the USPTO to block Oakley's registration of a design that is identical to a portion of the Razor Blades design.  Kravitz Decl. ¶ 19.

[13] It also bears noting that Oakley did not include these prior cases in its interrogatory answer, has failed to produce any documents concerning these disputes, and did not include them as categories of relevant documents in its initial disclosures.  Kravitz Decl. ¶ 20.  Oakley's counsel will be hard pressed to deny knowledge of these disputes because the same law firm representing Oakley here was counsel of record in the disputes with Bolle and International Tropic-Cal.  *Id.*

1 ██████████████████████████████████████████████.  *See* Kravitz

2 Decl., Ex. A (183:2-8).  Nor was she aware that ████████████

3 ████████████████████████████████████████████████████████

4 █████████████████████.  Kravitz Decl., Ex. A (183:9-12).  Oakley cannot in

5 good faith contend that this information is not highly relevant to Neff's defense.[14]

6        Ms. Vaughan also confessed to having no knowledge that ████████

7 ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 █████████████████████████.  *See* Kravitz Decl., Ex. A (186:20-

10 187:2; 188:17-25).[15]

11        **B. Oakley's Conduct Warrants Sanctions.**

12        Oakley's dilatory tactics are transparent.  Despite having the deposition

13 notice for two months and despite the deposition being *court-ordered* and despite

14 telling the Court that Ms. Vaughan was uniquely qualified to testify on all topics,

15 Oakley made the conscious decision to produce someone who was unable to offer

16 meaningful testimony on key topics.  *See* Kravitz Decl. ¶ 21.  Oakley and its

17 counsel had to know this, and this alone warrants the imposition of sanctions in

18 addition to an order compelling Oakley to produce witnesses who can satisfy Rule

19 30(b)(6) and affording Neff sufficient time to conduct its examination.  *See* Fed. R.

20 Civ. P. 30(d)(1) ("The court must allow additional time…if needed to fairly

21 examine the deponent or if the deponent, another person, or any other circumstance

22

23 ---
[14] Of course, it must be emphasized that these are two examples Neff found by
24 searching publicly available sources.  While they certainly should have been
disclosed by Oakley, and while Ms. Vaughan certainly should have been prepared
25 to testify about them, the Court should not assume that no other disputes existed.
Oakley should be compelled to look much harder.

26 [15] Oakley has not produced any documents relating to this trademark application,
and it did not identify this category of undeniably relevant documents in its initial
27 disclosures.  Kravitz Decl. ¶ 24.  Neff found these documents by hiring a vendor to
locate and retrieve them from USPTO archives.  *Id.*

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

1    impedes or delays the examination.").

2        Indeed, in addition to Oakley wasting Neff's time with hours of largely

3    uninformed testimony, Oakley's counsel also took steps to obstruct the deposition.

4    Oakley's counsel made *278 separate objections* over the course of a 4.5-hour

5    deposition.  *See* Kravitz Decl. ¶ 22.  Several of these objections were impermissible

6    "speaking" objections whereby counsel sought to coach the witness, Kravitz Decl. ¶

7    23.[16]  *See* Fed. R. Civ. P. 30(c)(2) ("An objection must be stated concisely in a

8    nonargumentative and nonsuggestive manner."); *see also Vestin Realty Mortgage*

9    *II, Inc. v. Vestin Fund II, LLC*, No. 08-cv-2011-LAB (AJB), 2010 U.S. Dist. LEXIS

10   113666, **8-9 (S.D. Cal. Oct. 25, 2010) (granting motion to compel additional

11   deposition, noting counsel's improper objections in violation of Rule 30(d)(1)).  For

12   example, in response to questioning the witness regarding Oakley's trademark

13   application for protection of a design substantially similar to the Razor Blades,

14   Oakley's counsel objected as follows:



---

[16] Oakley's counsel also impermissibly discussed the witness' testimony with the witness during breaks.  *See* Kravitz Decl., Ex. A (63:3-63:5; 63:18-21 (■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■).

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

[redacted]

Kravitz Decl., Ex. A (189:1-19).[17] Later in the deposition, counsel for Oakley also made the following impermissible objection:

[redacted]

[redacted]

[redacted]

Kravitz Decl., Ex. A (225:13-22). When counsel for Neff began to inquire into utility patents owned by Oakley that had covered elements of the Razor Blades, counsel for Oakley again impermissibly coached the witness through her objections:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Kravitz Decl., Ex. A (240:3-16).[18]

[17] Not surprisingly, the witness later testified [redacted]. Kravitz Decl., Ex. A (190:16-21).

[18] Counsel for Oakley repeatedly coached the witness to read the entire patent in an

1    Additionally, counsel for Oakley made this inappropriate speaking objection:

2    ██████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████  Kravitz Decl., Ex. A

4    (258:15-18).

5    This conduct is inappropriate during a deposition and, when coupled with the

6    witness' lack of knowledge on so many subjects, it rendered useless much of the

7    deposition.  In light of how unprepared witness was, and the disruptive conduct by

8    counsel, Neff respectfully requests an additional four (4) hours to complete the

9    30(b)(6) deposition of Oakley.

10   Moreover, the egregious scale of Ms. Vaughan's lack of preparation,

11   resulting in effectively a non-appearance by Oakley, warrants the imposition of

12   sanctions.  Indeed, "[m]any courts treat the failure of an organization to produce a

13   prepared and educated witness under Rule 30(b)(6) as tantamount to a

14   nonappearance at a deposition, meriting the imposition of sanctions pursuant to

15   Rule 37(d)(3)." *S. Cal. Rehab. Assoc., Inc. v. Nautilus.*, No. 09-cv-744-JLS (AJB),

16   2010 U.S. Dist. LEXIS 76508, *3 (S.D. Cal. July 29, 2010) (external citations

17   omitted) (awarding sanctions for failing to prepare 30(b)(6) witness); *see also*

18   *Avago Tech., Inc.*, 2015 U.S. Dist. LEXIS 66177; *Lofton v. Verizon Wireless (VAW)*

19   *LLC*, No. 13-cv-5665-YGR (JSC), 2015 U.S. Dist. LEXIS 79412 (N.D. Cal. June

20   18, 2015); *JSR Micro, Inc., v. QBE Ins. Corp.*, No. 09-cv-3044-PJH (EDL), 2010

21   U.S. Dist. LEXIS 56000 (N.D. Cal. May 14, 2010).  The Court has the authority to

22

23   effort to both run out the clock and impede the flow of questioning.  *See, e.g.*
     Kravitz Decl., Ex. A  (246:23-247:2 ████████████████████████████

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████

26   ████████████████████████████)).  The witness took her cues.  In response to
     at least one of these impermissible objections, the witness stated ████████████

27   ██████████████████████████████.  Kravitz Decl., Ex. A (249:4-6).

28

1   sanction parties and/or counsel who have delayed or impeded the discovery
2   process.   Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate
3   sanction—including the reasonable expenses and attorney's fees incurred by any
4   party—on a person who impedes, delays, or frustrates the fair examination of the
5   deponent").   Oakley's egregious conduct must not be condoned.   Neff respectfully
6   requests that the Court order Oakley to pay the costs and fees associated with
7   completing the 30(b)(6) deposition of Oakley, as well as for the time spent
8   preparing this motion.[19]

9   ### C. Oakley's Gamesmanship with Respect to Other Discovery

10   While the 30(b)(6) deposition is the most egregious example of Oakley's
11   efforts to frustrate Neff's ability to take discovery and mount its defense, it is
12   unfortunately part of a larger campaign.   Since the moment discovery commenced,
13   Oakley's litigation strategy has been to wage a war of attrition against its much
14   smaller opponent.   The design of Oakley's Razor Blades sunglasses (and hence its
15   purported trade dress) is functional as a matter of law.[20]   Oakley was well aware of
16   this when it commenced this action, as every aspect of its Razor Blades design was
17   previously protected by *five* utility patents and because its attempt to register
18   virtually the same product design as a trademark in 1987 was *refused by the United*
19   *States Patent & Trademark Office on the basis of functionality*.   In spite of these
20   facts, and indeed because of these facts, Oakley has gone to great lengths to make
21   this litigation, and specifically discovery, as painful and expensive for Neff as
22   possible, all while doing as little as possible to meet its affirmative discovery
23   obligations.

24   For example, during the parties' July 1 "meet and confer," Neff's counsel

---

[19] If the Court agrees, Neff will submit a declaration detailing its fees and expenses at the appropriate time.

[20] Oakley will also be unable to establish secondary meaning and likelihood of confusion.

advised Oakley's counsel that he believed Neff's document production would be completed within three weeks.  Kravitz Decl. ¶ 25.  In response, Oakley's counsel stated she did not know how much time Oakley would need, but said she would present a "proposal" for a date on which the parties would conduct a *mutual* exchange.  Kravitz Decl. ¶ 26.  When no proposal was received, Neff's counsel repeated the request on July 9 and again on July 23.  Kravitz Decl. ¶¶ 27-31.  Oakley did not respond to (or even acknowledge) any of these requests.  *Id.*

Instead, after refusing to respond for nearly a month, on July 29, Oakley's counsel sent Neff's counsel an email indicating that Oakley would be prepared to make "a" document production two days later and asked Neff to confirm that it would be prepared to make its production at the same time.  Kravitz Decl. ¶ 32.  Neff explained that its production had taken longer than expected and proposed that the parties agree to make their respective *complete* productions on Friday, August 7.  Kravitz Decl. ¶ 33.  Oakley did not respond to (or even acknowledge) this communication.  Kravitz Decl. ¶ 36.  Instead, in a transparent attempt to gain perceived moral high ground, Oakley unilaterally produced 166 documents to Neff on Friday evening, July 31.  Kravitz Decl. ¶ 38.  Most of these documents (which total approximately 3,000 pages) appear to be entirely irrelevant to the claims and defenses asserted in the action.  Kravitz Decl. ¶¶ 39-40.  In fact, much of the production appears to be recycled from a production made in an earlier, unrelated litigation.  Kravitz Decl. ¶ 41.

Oakley's "production" is more remarkable for what it did *not* include.  Oakley did *not* produce the file histories (and related documents) for the five utility patents and one abandoned utility patent application that protected virtually every aspect of the Razor Blades design for nearly two decades.  Kravitz Decl. ¶ 42.  The Supreme Court has held that expired utility patents covering the asserted trade dress are critical to the functionality determination.  *TrafFix Devices v. Mktg. Displays*,

532 U.S. 23, 29-30 (2001) (characterizing expired utility patents as "strong" evidence of functionality and noting that "[w]here the expired [utility] patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional").[21] Oakley also did *not* produce the file history (and related documents) for the trademark application it filed in 1987 to protect a design virtually identical to its Razor Blades design (which application was refused on grounds of functionality). Kravitz Decl. ¶ 43.   Moreover, Oakley did *not* produce a single email mentioning "Neff" – despite Ms. Vaughan's testimony that ███████████████████████ ████████████████. Kravitz Decl. ¶ 44 and Ex. A (140:6-13).

In stark contrast to Oakley, Neff collected over 730 GB of data, which equates to *approximately 70,000 documents*.  Kravitz Decl. ¶ 47.  Thus far, Neff has invested nearly *700 hours of attorney time* to collect and review documents and produced on August 7 over 13,000 documents totaling nearly 50,000 pages (about sixteen times as many pages as Oakley has produced).  Kravitz Decl. ¶¶ 48-49. Oakley has given Neff no indication of when it intends to make its complete production.  Kravitz Decl. ¶ 50.

Another recent episode underscores Oakley's disregard for the Court's admonition that the parties "cooperate" in conducting discovery.  Specifically, the Joint Discovery Plan, filed with the Court, obligates the parties to work together on search terms for their document collections/production process.  Dkt. 19 at 7.  Neff asked Oakley to agree to exchange the search terms and custodians they used to run their respective searches.  Kravitz Decl. ¶ 34.  Oakley ignored this request.  Kravitz Decl. ¶ 36.  Neff also asked Oakley to work together to agree on a date for the

---

[21] Oakley *has* produced documents relating to *design* patents, as it apparently believes those documents will support its position.  Oakley's production would seem to be selective and self-serving – not at all consistent with its obligations under Rule 26 and other applicable procedural rules and court orders.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NEFF'S *EX PARTE* APPLICATION
15-CV-00148 BAS DHB

mutual exchange of privilege logs.   Kravitz Decl. ¶ 35.   Oakley ignored this request.  Kravitz Decl. ¶ 36.

Neff will spare the Court the numerous other examples of Oakley simply ignoring Neff's inquiries and requests for basic courtesies.  Neff is playing by the rules and engaging in good faith and meaningful discovery, as the Federal Rules require.  Oakley cannot possibly make the same representation.  Instead, Oakley is dutifully ignoring – and thwarting – Neff's efforts to engage in cooperative discovery efforts.

By way of further example:  On July 30, 2015, Oakley served Neff with its portion of a joint motion for a discovery "dispute."  Kravitz Decl. ¶ 51.  Oakley sought to compel certain discovery from Neff, but had sat on the purported "dispute" for a month and then conveniently served its position just days before Oakley's 30(b)(6) deposition.   *Id*.  Despite the utter lack of urgency, Oakley demanded Neff provide its opposition by August 6, the day after the 30(b)(6) deposition. *Id*.

This transparent timing exposes Oakley's improper motives, and utter disregard for the Court's recent admonition that counsel for both parties "are expected to work cooperatively with each other in conducting discovery."  Dkt. 30 at 2, fn. 1.  In fact, while Neff provided its opposition to Oakley a day early (the same day as the deposition), Oakley then refused to file the document – claiming it contained misstatements and was an "ambush."[22]  In reality, Oakley did not want to file the joint motion because:  (1) the motion was a ploy, served in bad faith to waste Neff's time leading up to the deposition; and (2) Neff's opposition shone a

---

[22] Incredibly, Oakley – which has at least four lawyers (including three partners) actively working on this matter – accused Neff of "ambushing" Oakley by serving its opposition on the same day as the deposition.  Oakley actually argued that Neff had hoped none of the four Oakley lawyers served with the document would read it and that Oakley would simply file it.  Kravitz Decl. ¶ 53.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

bright light on Oakley's gamesmanship.  *See* Kravitz Decl. ¶ 52.[23]  By electing not to file the joint motion, Oakley again sought to avoid creating a record of its conduct.

In short, Oakley has made it very clear that – notwithstanding the Court's Order – it has no intention of cooperating with Neff on discovery.  To date, Oakley has produced only approximately 3,000 pages – undoubtedly a small fraction of its complete production.  Accordingly, Neff also respectfully requests that the Court order Oakley to make its complete document production by August 17, 2015 and – consistent with the Joint Discovery Statement filed with the Court – order Oakley to produce all pertinent details concerning its document collection and review process, including, without limitation, the custodians whose files were searched, the search terms employed, the number of documents collected, and the number of documents produced. Neff will absolutely provide the same information.

**IV.   Conclusion**

Based on the foregoing, Neff respectfully requests that the Court enter an Order:

(1)     Compelling Oakley to produce a knowledgeable witness or witnesses capable of satisfying Rule 30(b)(6) by providing informed, accurate, and meaningful testimony on each of the topics addressed within this application (Topics 2, 4, 8, 9 and 10), at an agreed-upon date not later than September 10;[24]

(2)     Staying any depositions Oakley seeks to take, including the deposition

---

[23] Neff has attached a copy of this unfiled Joint Motion to demonstrate the amount of effort Neff was forced to waste on opposing Oakley's motion.  Oakley's motion was clearly not brought in good faith, and therefore Neff respectfully requests that the Court order Oakley to reimburse Neff for the legal fees incurred preparing its opposition.  Neff spent more than twelve attorney hours preparing its opposition, amounting to over $5,000 in billed time. *See* Kravitz Decl. ¶55.

[24] Lead counsel for Neff will be on a long-scheduled family vacation during the weeks of August 17 and 24 and has an out-of-state deposition in another matter during the week of August 31.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

1  of Shaun Neff, until Oakley fully complies with this Order;

2      (3)    Compelling Oakley to make its complete document production on or

3  before August 17 in the format set out in Neff's First Set of Requests for

4  Production to Oakley (which is considered standard format for document

5  productions);

6      (4)    Compelling Oakley to provide Neff with all pertinent details

7  concerning its document collection and review process, including without limitation

8  the custodians whose files were searched, the search terms employed, the number

9  of documents collected, and the number of documents produced;

10     (5)    Compelling Oakley to supplement its answers to Interrogatory Nos. 7

11  (identifying U.S. sales of Razor Blades) and 15 (identifying prior disputes

12  concerning the Razor Blades design) by August 17;

13     (6)    Requiring Oakley to reimburse Neff for the fees and costs associated

14  with completing the 30(b)(6) deposition (including court reporter and videographer

15  costs, reasonable travel costs, and attorney time) and associated with the

16  preparation of this application;

17     (7)    Requiring Oakley to reimburse Neff for the fees and costs associated

18  with preparing its portion of the joint motion that Oakley served on Neff, demanded

19  Neff respond to the day after the 30(b)(6) deposition, and then – when Neff met this

20  arbitrary deadline – chose not to file; and

21     (8)    Granting any additional relief that the Court deems just and proper.

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

Dated: August 10, 2015          Respectfully submitted,

NIXON PEABODY LLP

By: */s/ Neal J. Gauger*
Sarah Erickson André
Neal J. Gauger
Jason C. Kravitz (*pro hac vice*)
Troy K. Lieberman (*pro hac vice*)

Attorneys for Defendant and
Counterclaimant NEFF, LLC _____

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB

1

2

## **PROOF OF SERVICE**

3      I hereby certify that on August 10, 2015, I caused a copy of the above

4  document to be electronically filed with the Clerk of the Court using the CM/ECF

5  system, which will send electronic notification of such filing to the following

6  person(s):

7
Michael K. Friedland
8  Lauren Katzenellenbogen
Ali S. Razai
9  KNOBBE, MARTENS, OLSON, & BEAR, LLP
10 2040 Main Street, 14th Floor
Irvine, CA 92614
11 Tel: (949) 760-0404
Fax: (949) 760-9502
12
michael.friedland@knobbe.com
13 ali.razai@knobbe.com
14 kent.shum@knobbe.com
samantha.hsu@knobbe.com
15

16

17                                   */s/ Neal J. Gauger*

18

19

20

21

22

23

24

25

26

27

28

- 24 -

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF NEFF'S *EX
PARTE* APPLICATION
15-CV-00148 BAS DHB